**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tom GUERRERO, also known as Tom Pacheco, and Helen Guerrero, also known as Princey, Defendants–Appellants.**

Nos. 89–1359 & 89–1484.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1989.

Decided Jan. 30, 1990.

---

K. Tate Chambers, Asst. U.S. Atty. (argued), Peoria, Ill., for U.S., plaintiff-appellee.

Susan K. Lucas (argued), Peoria, Ill., for Tom Guerrero, defendant-appellant.

Before WOOD, Jr., POSNER and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Tom Guerrero appeals the sentence imposed after he entered a guilty plea to conspiracy to distribute cocaine, 21 U.S.C. § 846. Helen "Princey" Guerrero appeals the sentence she received after pleading guilty to conspiracy to distribute cocaine, 21 U.S.C. § 846; two counts of distribution of cocaine, 21 U.S.C. § 841(a)(1); and a money-laundering charge, 18 U.S.C. § 1956, contained in a separate indictment. Both sentences were governed by the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. § 991 *et seq.*, and the Sentencing Guidelines ("Guidelines") promulgated by the United States Sentencing Commission ("Commission"). Tom Guerrero asserts that he is entitled to a new sentence because the district court improperly calculated the sentences of several of his codefendants by sentencing them on the basis of their personal behavior in the conspiracy rather than their "attributable conduct," which was the basis for his own sentence. Additionally, Tom Guerrero argues that the recantation of a major witness who testified regarding the extent of Guerrero's cocaine deliveries requires a remand for imposition of a lesser sentence. Helen "Princey" Guerrero ("Princey Guerrero") maintains that the district court improperly considered her employment of her family in the cocaine enterprise as a factor in aggravation at her sentencing. We affirm.

## I. BACKGROUND

### A. *Facts*

Tom and Princey Guerrero were members of a cocaine distribution conspiracy comprised primarily of Guerrero family members. Princey Guerrero headed the conspiracy, which operated out of her home and distributed cocaine in the Galesburg, Illinois area. Princey Guerrero obtained the cocaine during drug-buying expeditions to Chicago. Tim Brown, the only conspirator who did not enjoy a tie of kinship with his cohorts, sold cocaine from Princey Guerrero's house and accompanied her to Chicago acting as a bodyguard. Brown ultimately pleaded guilty to two distribution counts. Helen R. Guerrero, Princey Guerrero's mother, lived with Princey Guerrero and pleaded guilty to conspiring to distribute cocaine from the Guerrero household. Rosemary Guiterrez, Princey Guerrero's sister, pleaded guilty to one count of distribution of cocaine. This matriarchal conspiracy distributed at least one kilogram of cocaine a year from 1986 to August 25, 1988, when the Guerrero enterprise abruptly ended with the participants' arrests. Neither Tom nor Princey Guerrero dispute the district court's findings that all five defendants conspired to distribute cocaine.

### B. *Tom Guerrero's Sentencing Hearing*

#### a. Factual Background

The indictment charged Tom Guerrero with conspiracy (Count 2), and the substantive offenses of distribution of cocaine on the dates of March 16, 1988 (Count 6), and April 6, 1988 (Count 7). Under a written plea agreement, Guerrero pleaded guilty to the conspiracy count. Tom Guerrero was the first of the conspirators to be sentenced.

At Tom Guerrero's sentencing hearing on February 3, 1989, the court considered and adopted the presentence report's recommended findings of fact, which were revised in several instances by stipulation of the parties. The court found that Guerrero was involved in the conspiracy from December 1987 to August 25, 1988, and that he made deliveries to only two customers during this time period: Stephen Lakis and a confidential informant. At the sentencing hearing, the court adopted the presentence report's finding that Lakis purchased $25,000.00 worth of cocaine (approximately 354.37 grams) from the Guerrero conspiracy. The parties agreed and the court found that Tom Guerrero delivered cocaine to Lakis on a regular, but not daily, basis during this time period. Guerrero's habitual association with Lakis was attributed to the intensity of their sexual relationship rather than the frequency of their drug dealings. The court also found that Guerrero was not engaged in drug transac-

tions during his intermittent sojourns in Chicago. The sentencing judge stated that if Lakis was receiving cocaine on a daily basis from the Guerrero conspiracy, another· conspirator was making deliveries to Lakis in the intervals between Tom Guerrero's deliveries. The judge also determined that Tom Guerrero was unaware of the full extent of Princey Guerrero's profit or the amount of cocaine that was distributed during the entire existence of the conspiracy. Nonetheless, when reciting the presentence report's assertion that the Guerrero organization sold at least one kilogram of cocaine a year, the district court noted that "these figures are relevant to this defendant only to the extent that they involve a period of time from December 1987 on."

As required by section 1B1.3 of the Guidelines, the district court determined the appropriate guideline range based on Tom Guerrero's "relevant conduct." Because of his participation in the conspiracy, the district court found that Guerrero was "involved in the distribution of 500 to 700 grams of cocaine." Section 2D1.1(a)(3) of the Guidelines provides for a base offense level of 26 for offenses involving 0.5 to 1.9 kilograms of· cocaine. After receiving a two-level reduction for acceptance of responsibility pursuant to section 3E1.1(a) of the Guidelines and a two-level reduction for being a minor participant under section 3B1.2(b) of the Guidelines, Guerrero had a net offense level of 22. After arriving at the defendant's offense level, the court proceeded to consider the defendant's criminal history, which is the second factor in any sentencing determination. Due to his prior transgressions of the law, Guerrero received three criminal history points, which placed him in Criminal History Category II. Cross-referencing an offense level of 22 with a category II criminal history yields a sentencing range of 46 to 57 months. Guidelines, ch. Five, pt. A. Based upon the identical recommendations of the government and defense counsel, the district court sentenced Tom Guerrero to 46 months imprisonment, which was the lowest sentence that could be imposed within the appropriate guideline range. Neither Guerrero nor his attorney disputed the district court's calculation of his sentence under the Guidelines.

Tom Guerrero alleges, however, that his sentence is excessive by virtue of the disparity between his and his codefendants' sentences. Guerrero asserts that he received a disparate sentence as a result of the district court's maladroit application of the Sentencing Guidelines when determining his co-defendants' sentences. Guerrero also contends that he is entitled to a new sentence due to the government's failure to fulfill its obligation to produce evidence favorable to the accused pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The alleged *Brady* material concerns the government's revelation at Princey Guerrero's sentencing hearing, which was held two weeks after Tom Guerrero's sentencing hearing, that Stephen Lakis, the recipient of Tom Guerrero's drug deliveries, had clarified his earlier statement regarding the amount of cocaine he purchased from the Guerrero conspiracy. On the morning of Princey Guerrero's sentencing hearing, Lakis downgraded his estimate of the amount of cocaine he purchased from the Guerrero conspiracy from approximately $25,000.00 worth of cocaine (354.37 grams) to approximately $7,500.00 (70.88 grams). Tom Guerrero does not dispute the government's representation of when it first learned of and resolved its misapprehension of the amount of cocaine that Lakis received from the conspiracy.

### b. Analysis

The standard of appellate review of a district court's sentencing determination is governed by 18 U.S.C. § 3742(e) and (f).[1]

---

**1.** Subsections (e) and (f) of section 3742 provide:

(e) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable, having regard for—

Subsection 3742(e) essentially provides that appellate courts must review the record to determine if a sentence (1) was imposed in violation of the law; or (2) resulted from an incorrect application of the Guidelines; or (3) was imposed for an offense not contemplated by the Guidelines and is plainly unreasonable; or (4) is outside the applicable guideline range and is unreasonable. Subsection 3742(e) further requires that we give due regard to the district court's credibility determinations and accept the sentencing court's findings of fact unless they are clearly erroneous. We are also obliged to give due deference to the district court's application of the Guidelines to the facts. Subsection 3742(f) informs us that we must remand with instructions for resentencing if our review of the record reveals any of the four exclusive bases for reversing a sentence listed in subsections (e) and (f).

Paradoxically, Guerrero directly invokes this court's jurisdiction under 18 U.S.C. § 3742(a)(2), which allows a defendant to appeal sentences resulting from an incorrect application of the sentencing guidelines, while conceding that he was the only member of the conspiracy whose "relevant conduct" for purposes of determining an offense level was correctly calculated. Guerrero's argument regarding Lakis's recantation, however, implicitly invokes ap-

pellate review under section 3742(a)(1), which makes appellate review available for sentences imposed in violation of law. This court has recently noted in dictum that appellate review would be available for sentences imposed in violation of law as a result of the sentencing judge's reliance on inaccurate information. *See United States v. Franz*, 886 F.2d 973, 980–81 (7th Cir. 1989).

■ We agree with defendant's concession that his base and net offense levels were correctly calculated. While there was no dispute that the conspiracy had distributed at least one kilogram of cocaine a year, the amount of drugs Guerrero was responsible for delivering to Lakis and the informant was disputed. This dispute, however, is of no consequence. Tom Guerrero pleaded guilty to conspiracy to distribute cocaine, 21 U.S.C. § 846, and was sentenced under section 2D1.4 of the Guidelines—*Attempts and Conspiracies.* Application note 1 to section 2D1.4 states that "[i]f the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy *that was known to the defendant or was reasonably foreseeable"* (emphasis added).[2] This

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

(f) Decision and disposition

If the court of appeals determines that the sentence—

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(2) is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions and—

(A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(B) if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(3) *is not described in paragraph (1) or (2), it shall affirm the sentence.*

(emphasis added).

2. The Commentary to the Guidelines, which includes the application notes, is to be treated as "the legal equivalent of a policy statement." Guidelines § 1B1.7.

court has also noted that "[t]he amount of narcotics considered in sentencing for conspiracy includes not only the amount involved in the transactions that were known to the defendant but also those that were reasonably foreseeable, reflecting the fact that each conspirator is responsible for the acts and offenses of each one of his co-conspirators committed in furtherance of the conspiracy." *United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989). Section 1B1.-3(a)(1) of the Guidelines, entitled *Relevant Conduct (Factors that Determine the Guideline Range)*, states that relevant conduct includes

> all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

Application note 1 to section 1B1.3 states that "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Thus, a defendant who pleads guilty to a conspiracy charge is held accountable, for purposes of determining his relevant conduct and the applicable guideline range, for all drug transactions that he was aware of or that he should have reasonably foreseen.

At Tom Guerrero's sentencing hearing, the district court found and the parties agreed that the conspiracy was responsible for the sale of at least one kilogram of cocaine a year, which averages out to 83.3 grams a month. During the approximately nine months that Tom Guerrero was a member of the conspiracy, at least 749.7 grams of cocaine were distributed. Both parties agreed and the court found that because of his involvement in the conspiracy, Tom Guerrero was responsible under the Guidelines for the sale of 500 to 750 grams of cocaine, which placed him at a base offense level of 26 for offenses involving .5 to 1.9 kilograms of cocaine. In light of the defendant's concession that the sentencing judge correctly calculated his sentence and the relevant conduct upon which it was based, we conclude that the district court's finding that Guerrero was responsible for the distribution of between 500 to 750 grams of cocaine is not clearly erroneous.

■ The government's revision two weeks after Tom Guerrero's sentencing hearing of the amount of cocaine that Stephen Lakis purchased from the Guerrero conspiracy, however, raises the issue of whether Tom Guerrero's sentence was imposed in violation of law due to the sentencing judge's reliance on inaccurate information. Sentencing courts are obliged to use fair procedures to determine the accuracy of the information considered in sentencing. *See Franz*, 886 F.2d at 980; *United States v. Agyemang*, 876 F.2d 1264, 1270 (7th Cir.1989). Not all factual inaccuracies, however, amount to misinformation of constitutional magnitude. *Franz*, 886 F.2d at 980; *United States ex rel. Villa v. Fairman*, 810 F.2d 715, 718–19 (7th Cir.1987). A defendant may prove that his constitutional right to due process was violated if he demonstrates "grave doubt as to the veracity of the information ... [and] that the court relied on that false information in determining the sentence." *United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir.1986); *see also, Franz*, 886 F.2d at 980; *United States v. Nowicki*, 870 F.2d 405, 408 (7th Cir.1989); *Blake v. United States*, 841 F.2d 203, 206 (7th Cir.1988). Although the sentencing court's finding that the drug sales to Stephen Lakis totaled approximately $25,000.00 (354.37 grams) may have been inaccurate, the amount sold to Lakis was clearly not relied upon by the court when it determined Guerrero's base offense level. Rather, it was the amount of drugs distributed by the conspiracy during Guerrero's membership, which was the minimum of 749.7 grams cited by the court and agreed upon by the parties, that man-

dated the base offense level of 26. Tom Guerrero's base offense level was determined by the sentencing court's consideration of Guerrero's offense of conviction and the relevant conduct surrounding that offense. Despite the references during his sentencing hearing to the inflated amount of cocaine that Lakis allegedly received from the conspiracy, Tom Guerrero benefited from a two-level reduction of his base offense level for his minor role in the conspiracy. Thus, the amount of cocaine that the conspirators delivered to Stephen Lakis obviously was immaterial and was not relied upon by the sentencing court when it determined Guerrero's base offense level.

 Guerrero's underlying claim is that his sentence of 46 months in prison is excessive because it is more severe than the sentences his co-conspirators received.[3] Essentially, Guerrero argues that because his co-conspirators received more lenient sentences as a result of the district court's faulty application of the Guidelines at their sentencing hearings, we should remand his case to allow the district court to duplicate its mistakes at his resentencing.[4] The rule in prior cases, when defendants were not sentenced under the Guidelines, was that sentences within the maximum term provided by Congress were reviewable only for a manifest abuse of discretion. *United States v. Threw*, 861 F.2d 1046, 1049 (7th Cir.1988); *United States v. Ray*, 828 F.2d 399, 425 (7th Cir.1987), *cert. denied*, 485 U.S. 694, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988); *United States v. Mitchell*, 788 F.2d 1232, 1237 (7th Cir.1986). A court abused its discretion if it relied upon inaccurate information in exercising its discretion or failed to exercise any discretion at all. *Threw*, 861 F.2d at 1049; *United States v.*

*Nesbitt*, 852 F.2d 1502, 1521–22 (7th Cir. 1988), *cert. denied*, ── U.S. ──, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Ford*, 840 F.2d 460, 466 (7th Cir.1988). A mere showing of disparity in sentences among codefendants did not, alone, demonstrate any abuse of discretion. *See Threw*, 861 F.2d at 1049; *Ray*, 828 F.2d at 426; *United States v. Peters*, 791 F.2d 1270, 1303 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986).

Congress provided a comprehensive standard of review for sentences imposed under the Guidelines, however, in 18 U.S.C. § 3742. In its discussion of the procedure set forth in section 3742 for appeals of sentences imposed under the Guidelines, the Senate Report accompanying the Sentencing Reform Act noted that "[u]nder subsection [ (f) ], if the court of appeals finds that the sentence was not imposed in violation of law, or as a result of incorrect application of the guidelines, and is not unreasonable, it is to affirm the sentence." S.Rep. No. 98–225, 98th Cong., 2d Sess. 154, *reprinted in* 1984 U.S. CODE CONG. & ADMIN.NEWS pp. 3182, 3337. Subsections (e) and (f) of 18 U.S.C. § 3742 clearly mandate that we affirm Tom Guerrero's sentence despite its disparity with his codefendants' sentences. There is no statement in the legislative history suggesting that sentences within the Guidelines should be reviewed because of a claim that a particular sentence is draconian or too lenient. *See Franz*, 886 F.2d at 980–81, 981 n. 7 ("Allowing defendants to appeal under section 3742(a)(2) sentences within the applicable guideline range on the ground that the district court's refusal to depart was a misapplication of the guidelines would frus-

---

**3.** Tom Guerrero's codefendants were sentenced as follows: "Princey" Guerrero was sentenced to 100 months; Tim Brown was sentenced to 6 months; Helen R. Guerrero ("The Grandmother") was sentenced to 3 months; and Rosemary Guiterrez was sentenced to 45 days work-release.

**4.** It is apparent from our review of the record that the sentencing court may have miscalculated the sentences of several of Tom Guerrero's co-conspirators. Instead of imposing Guerrero's co-conspirators' sentences based upon *their*

"conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant[s] or was reasonably foreseeable," the sentencing court considered only the amounts that they personally delivered. This miscalculation allowed them to receive much more lenient sentences than was their due under the Guidelines. While the government concedes the error as to co-conspirator Tim Brown, it has chosen not to appeal Brown's sentence pursuant to 18 U.S.C. § 3742(b)(2).

trate Congress' attempt to establish a scheme of limited appellate review.... [I]f every sentence that a defendant contended was 'greater than necessary' could be appealed under § 3742(a)(1) as a statutory violation ... *every* defendant could argue that his sentence was 'greater than necessary' and thus appealable under § 3742(a)(1) as a sentence in violation of law."); *United States v. Colon,* 884 F.2d 1550, 1555 (2d Cir.1989) ("There is no corresponding statement in the legislative history indicating a need to review sentences *within* the Guidelines because of a claim of wrongful failure to depart or that a particular sentence is 'too severe or too lenient' "), *cert. denied,* —— U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 550 (U.S.1989). Having earlier found that Guerrero's sentence was within the applicable guideline range and not imposed in violation of law, or as a result of an incorrect application of the Guidelines, we find that we should affirm Guerrero's sentence unless the purported *Brady* violation requires a resentencing.

■ Finally, Guerrero alleges that he is entitled to a new sentence due to the government's failure to fulfill its obligation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to produce evidence favorable to the accused. The asserted *Brady* material was Stephen Lakis's revision of the amount of cocaine he purchased from the Guerrero conspiracy. In his brief, Guerrero states that he accepts the prosecutor's statement that Lakis did not downgrade the amount of cocaine he had purchased from the conspiracy until two weeks *after* Guerrero's sentencing.

In *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196; *see also Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987); *United States v. Agurs,* 427 U.S.

97, 104 n. 10, 96 S.Ct. 2392, 2398 n. 10, 49 L.Ed.2d 342 (1976). To succeed on a *Brady* claim, a defendant must establish "(1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." *United States v. Jackson,* 780 F.2d 1305, 1308 (7th Cir.1986); *see also United States v. Driver,* 798 F.2d 248, 250 (7th Cir.1986). Evidence is "material" when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *see also Ritchie,* 480 U.S. at 57, 107 S.Ct. at 1001; *United States v. Douglas,* 874 F.2d 1145, 1163 (7th Cir.1989).

As our earlier discussion of the Lakis recantation suggests, Lakis's revision of the amount of cocaine that Guerrero personally delivered could not be regarded as material evidence for purposes of determining Guerrero's sentence. Because Guerrero was convicted as a conspirator, the Guidelines compelled the sentencing judge to sentence Guerrero "only on the basis of [his] conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to [Guerrero] or was reasonably foreseeable." Guidelines § 2D1.4 application note 1; *see also United States v. Savage,* 891 F.2d at 151 (7th Cir.1989); Guidelines § 1B1.3(a)(1) application note 1. Guerrero received the lowest possible sentence within the appropriate guideline range for the amount of cocaine all parties agreed should be considered as his "relevant conduct" for purposes of sentencing. The sentencing court's references during Guerrero's sentencing hearing to the amount of cocaine delivered to Lakis only concerned the calculation of Guerrero's role in the offense. After determining that Guerrero was a minor participant in the conspiracy, the district court reduced Guerrero's base offense level by two levels under Guideline § 3B1.2(b). Even under Lakis's revised version of Guerrero's drug deliveries, however, the amount of cocaine

and the number of deliveries would have precluded the district court from characterizing Guerrero's role as anything less than minor under section 3B1.2(b).[5] Accordingly, we find that Guerrero's request for a new sentence based upon an alleged *Brady* violation lacks merit.

### C. *Princey Guerrero's Sentencing Hearing*

Princey Guerrero, the materfamilias of the Guerrero conspiracy, pleaded guilty to one count alleging conspiracy to distribute cocaine, two cocaine distribution counts, and a money-laundering charge contained in a separate indictment. At her sentencing hearing, the defendant stipulated to the presentence report and the court's calculation of her sentencing range under the Guidelines. After cross-referencing her offense level of 30 with her category I criminal history, the court arrived at a sentencing range of 97 to 121 months. The government and defense counsel requested the district court to impose a sentence of 97 months as a reward for the defendant's extensive cooperation with the government. The court declined to heed their joint request and sentenced Princey Guerrero to 100 months.

■ When sentencing Princey Guerrero, the district judge stated the following reasons for imposing the 100–month sentence:

I would be willing ... to follow the government's recommendation if were not [*sic*] for two things: number one, the fact that you ran this out of your home with your children around, although they typically weren't there when the transactions occurred. And I think you were here last week when I sentenced your mother. I'm very troubled by that. I sentenced her to 90 days in jail because I said there are certain lines that mothers shouldn't step over. I also think there are certain lines that children should not put their parents in the position of stepping over. Your mother apparently was living with you because she was not in good financial shape. And to think that under those circumstances you allowed her to be used by you and others as a facilitator for what happened here, even if it was opening the door one time to a drug dealer or purchaser, you are going to have to live with that for a long time. So I think there needs to be a slight recognition of that to make a point. So I am not going to follow the government's recommendation and I'm going to raise it by three months just as a symbol ..., if nothing else, and I'm going to be sentencing you to a hundred months in prison.

On appeal, Princey Guerrero alleges that the district court improperly considered the effect of Princey's crimes on her family and increased her sentence as a result.

In *United States v. Rodriguez*, 691 F.Supp. 1252 (W.D.Mo.1988), *aff'd*, 881 F.2d 1080 (8th Cir.1989), which defense counsel principally relies upon in his brief, the district court correctly noted that under section 5H1.5 of the Guidelines family ties and responsibilities are not ordinarily relevant considerations when determining whether a sentence should be imposed out-

---

**5.** Under section 3B1.2 of the Guidelines, entitled *Mitigating Role,* a district court can decrease a defendant's base offense level by 4 levels if he was a minimal participant in criminal activity, by 2 levels if he was a minor participant in criminal activity, and by 3 levels if his role in the offense falls between "minor" and "minimal." Application note 2 to section 3B1.2 states that "downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a *single* marihuana shipment, or in a case where an individual was recruited as a courier for a *single* smuggling transaction involving a small amount of drugs." (emphasis added). Application note 3 states that "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Given the number of deliveries Tom Guerrero made to Lakis and the amount of cocaine Guerrero admitted to delivering to Lakis, the district court correctly characterized Tom Guerrero as a minor participant. Lakis's apparent recantation does not appreciably reduce Tom Guerrero's role in the conspiracy for purposes of section 3B1.2. Furthermore, defense counsel has not alleged on appeal that Guerrero's role was anything less than minor.

*side* the Guidelines.[6] *Id.* at 1253. The simple response to defense counsel's citation of *Rodriguez* is that *Rodriguez* and the Guidelines section it discusses concern the propriety of considering family ties and responsibilities as a basis for *departure* from a guideline range. Princey Guerrero was sentenced within her guideline range. Furthermore, the sentencing judge did more than consider mere family "ties and responsibilities." The district judge increased Princey Guerrero's sentence by three months because she operated the conspiracy in the presence of her children and employed her financially dependent mother in her drug distribution operation.

The Sentencing Commission has set forth a two-step process for selecting a sentence. A sentencing court first determines the defendant's offense level and criminal history category to arrive at a sentencing range. Guidelines § 1B1.3 provides a specific list of factors that limit the information a sentencing court can consider when calculating a sentencing range. The sentencing court then imposes an appropriate sentence, either selecting a sentence within the guideline range or departing from the Guidelines. Guidelines § 1B1.4 broadly defines the information a court may consider when selecting a sentence within the guideline range or departing from the Guidelines: "In determining the sentence to impose within the Guideline range, or whether a departure from the Guidelines is warranted, the court may consider, *without limitation, any information concerning the background, character and conduct of*

the defendant, unless otherwise prohibited by law. See 18 U.S.C. § 3661." (emphasis added).[7]

The Commission designed Guidelines § 1B1.4 to give the sentencing court the same broad discretion it has always had under 18 U.S.C. § 3661 and its identical predecessor 18 U.S.C. § 3577.[8] *See* Guidelines § 1B1.4 commentary; *United States v. Roberts,* 881 F.2d 95, 106 (4th Cir.1989). In *United States v. Miller,* 874 F.2d 466 (7th Cir.1989), we noted that we "will be quite deferential to a sentencing judge's decision to impose a sentence within the correctly ascertained guideline range." *Id.* at 471. Princey Guerrero concedes that her guideline range was correctly calculated. All of the information considered by the district court to fix Princey Guerrero's sentence within the correct guideline range was proper under Guidelines § 1B1.4 and 18 U.S.C. § 3661. A sentence within the correct guideline range that was not imposed in violation of the law must be affirmed. 18 U.S.C. § 3742(f)(3). The district court imposed Princey Guerrero's sentence in conformance with the law after properly applying the Sentencing Guidelines.

## II. CONCLUSION

The district court correctly applied the Guidelines when it sentenced Tom and Helen "Princey" Guerrero. The appellants' suggestions that their sentences were imposed in violation of law are meritless.

---

**6.** Section 5H1.6 provides that
Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines. Family responsibilities that are complied with are relevant in determining whether to impose restitution and fines. Where the guidelines provide probation as an option, these factors may be relevant in this determination. If a defendant is sentenced to probation or supervised release, family ties and responsibilities that are met may be relevant in the determination of the length and conditions of supervision.

**7.** The Commentary to Guidelines § 1B1.4 notes: [This] section is based on 18 U.S.C. § 3661, which recodifies 18 U.S.C. § 3577. The reco-

dification of this 1970 statute in 1984 with an effective date of 1987 (99 Stat. 1728), makes it clear that Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence under the future guideline sentencing system. A court is not precluded from considering information that the guidelines do not take into account.

**8.** 18 U.S.C. § 3661 provides:
No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Both Tom and Helen "Princey" Guerrero's sentences are therefore AFFIRMED.