972 F.2d 352
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Scott KEMPER, Defendant-Appellant.
 No. 91-3235.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 31, 1992.
Decided Aug. 3, 1992.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Scott Kemper pleaded guilty to one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). On appeal, Mr. Kemper's appointed counsel filed a motion to withdraw, believing any appeal would be frivolous. See Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). Pursuant to Circuit Rule 51(a), we notified Mr. Kemper of his attorney's motion, and we have received no response. In the Anders brief, counsel identifies the following issue that Mr. Kemper conceivably could argue on appeal: whether the district court erred in finding that the results of urinalysis tests were sufficiently reliable to be considered in setting Mr. Kemper's sentence. We conclude that there was no error.
 
 
 2
 On January 24, 1991, an authorized search of Mr. Kemper's home by agents of the Drug Enforcement Administration uncovered 25 marijuana plants, some loose marijuana, and drug paraphernalia. Mr. Kemper was arrested and subsequently released on bond. Two of the conditions of his pretrial release were that he not violate any federal, state or local laws, and that he submit to drug testing on the demand of any United States Probation Officer. A urine sample taken from Mr. Kemper on January 29, 1991, tested positive for cannabis. A sample taken on January 31, 1991, tested negative. A third sample taken February 11, 1991, also tested positive for cannabis. The first positive test was attributed to marijuana use that occurred prior to the defendant's arrest. Because of the intervening negative test, however, the Probation Office viewed the second positive sample as proof of a new use of marijuana. Based on this new usage, Mr. Kemper's bond was revoked and he was detained for four days. He was then released on a modified bond which required participation in a substance abuse treatment program. All subsequent urinalysis tests proved negative. On May 22, 1991, Mr. Kemper pleaded guilty to marijuana manufacturing.
 
 
 3
 At the sentencing hearing, defense counsel objected to the inclusion of the information surrounding Mr. Kemper's bond revocation in the presentence report. In support of the alleged bond violation, the government sought to introduce into evidence the laboratory reports of the urinalysis testing. Defense counsel argued that the government had not laid a proper foundation for admission of the test results into evidence, and that there was no qualified witness to testify to the content of the laboratory reports. After hearing testimony from Douglas Heuermann, the Probation Officer who took the January 29 sample, and from John Welter, the individual who took the January 31 sample, the district court ruled that the test results were admissible and that the government had established the bond violation by a preponderance of the evidence.
 
 
 4
 With a two-level reduction for acceptance of responsibility, the district court determined that Mr. Kemper's offense level was 10. Mr. Kemper had a criminal history category of I, placing his guideline imprisonment range at 8-14 months. Pursuant to a plea agreement, because Mr. Kemper had provided the government with names of individuals that he suspected to be involved with illegal drugs, the government recommended a sentence at the bottom of the guideline range. The district court sentenced Mr. Kemper to 11 months' imprisonment to be followed by a four-year term of supervised release and explained:
 
 
 5
 I would normally put you, under all these circumstances, in the middle of the range, taking into account something for the fact that you did give these names and mostly taking into account that you had a dirty urine. I believe, based on what I heard here, that you did use marijuana after you were put out on bond. Anyway, when I wrap all of those things together, up and down, I come up with the [ ] sentence.
 
 
 6
 (Sent.Tr. at 59).
 
 
 7
 Ordinarily, we lack jurisdiction to review a sentence set within the applicable guideline range. United States v. Guerrero, 894 F.2d 261, 267-68 (7th Cir.1990). However, this court recognizes a narrow exception to this general rule where the defendant "demonstrates 'grave doubt as to the veracity of the information ... [and] that the court relied on that false information in determining the sentence.' " United States v. Franz, 886 F.2d 973, 980 (7th Cir.1989) (quoting United States v. Eschweiler, 782 F.2d 1385, 1387 (7th Cir.1986)); see also 18 U.S.C. § 3742(a)(1). This appeal falls within this exception since Mr. Kemper attacks the validity of the information relied upon by the district court in determining the appropriate sentence.
 
 
 8
 At the sentencing hearing, defense counsel objected to the admission of the laboratory results as hearsay. However, the rules of evidence do not apply at sentencing hearings. Fed.R.Evid. 1101(d)(3); United States v. Newman, 1992 U.S.App. LEXIS 11554 at * 11 (7th Cir. May 26, 1992). Under the Sentencing Guidelines, at a sentencing hearing, "[r]eliable hearsay may be considered." U.S.S.G. § 6A1.3, Commentary. We review the district court's decision to rely on contested hearsay information under an abuse of discretion standard. United States v. Agyemang, 876 F.2d 1264, 1272 (7th Cir.1989). To successfully challenge the accuracy of this information on appeal, the defendant must offer something more "than his own uncorroborated version of the facts." United States v. Musa, 946 F.2d 1297, 1307 (7th Cir.1991).
 
 
 9
 The defense attempts to undercut the reliability of the test results by emphasizing that the government presented no evidence to show that the same testing procedures were used in each case. The defense also questions whether any sample was taken on January 31, claiming that the donor's initials on the intake form are not in Mr. Kemper's handwriting. Finally, the defense argues that no reliable evidence was offered by the government to explain the government's exhibits pertaining to the January 29 and February 11 samples.
 
 
 10
 The government need not establish beyond a reasonable doubt that Mr. Kemper used illegal drugs while on pretrial release. To be considered by the court at sentencing, the government need only prove the bond violation by a preponderance of the evidence. United States v. White, 888 F.2d 490, 499 (7th Cir.1989). We believe it has done so. In support of the laboratory results, the government presented the testimony of Douglas Heuermann and John Welter. Both testified to the usual procedure and chain of custody followed in urinalysis testing. The defense presented no witnesses or other evidence to rebut the accuracy of the testing procedures. With respect to the allegedly forged initials on the January 31 sample, the district court explicitly found that the defendant had initialed each of the intake forms accompanying the three samples. (Sent.Tr. at 43). We see no reason to overturn the district court's finding of fact. Direct testimony was presented as to the chain of custody of the January 29 and January 31 samples. It is true that no witness testified directly with regard to the February 11 sample, but two witnesses testified to the usual proceedings in such tests, and the sample was accompanied by a facially valid intake form.
 
 
 11
 We agree with the district court's conclusion that the test results could properly be considered at the sentencing hearing. The district court committed no abuse of discretion. Because we find no meritorious issue for appeal, we GRANT counsel's motion to withdraw, and DISMISS the appeal as frivolous.