# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 12, 2012       Decided February 8, 2013

No. 11-5298

PETER JAMES ATHERTON,
APPELLANT

v.

DISTRICT OF COLUMBIA OFFICE OF THE MAYOR, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-00680)

*Benjamin R. Dryden* argued the cause for appellant. With him on the briefs was *David T. Ralston, Jr.*

*Richard S. Love*, Senior Assistant Attorney General for the District of Columbia, argued the cause for appellee Suzanne Bailey-Jones. With him on the brief were *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

*Alan Burch*, Assistant United States Attorney, argued the cause for appellee Daniel Zachem. With him on the brief

were *Ronald C. Machen, Jr.*, United States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney.

Before: ROGERS, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

Concurring opinion by *Circuit Judge* ROGERS.

BROWN, *Circuit Judge*: Today we bring resolution to nearly a decade's worth of litigation. As explained in *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 677–78 (D.C. Cir. 2009) (*Atherton II*), juror officer Suzanne Bailey-Jones unceremoniously removed Peter James Atherton from grand jury service after Assistant United States Attorney (AUSA) Daniel Zachem reported the complaints of other members of the grand jury. The District Court concluded appellees Bailey-Jones and Zachem were entitled to qualified immunity and granted their respective motions to dismiss. Because Atherton has failed to convince us that he had a clearly established constitutional entitlement to a more comprehensive termination process when he was excluded from jury service, we affirm.

I

We will not rehearse the facts already discussed at length in *Atherton II*, where we dismissed the bulk of Atherton's case save his due process claims against Bailey-Jones and AUSA Zachem. Because "qualified immunity . . . was not addressed below and was only thinly briefed on appeal," we remanded the matter, emphasizing that the District Court would:

retain[] the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first" — (1) whether the alleged facts show that the officials' conduct violated a statutory or constitutional right and (2) whether that right was clearly established at the time of the incident — "in light of the circumstances in the particular case at hand."

*Id.* at 690–91 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see also Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (noting that this "approach comports with [the Court's] usual reluctance to decide constitutional questions unnecessarily").

If the District Court chose to resolve matters on the second prong and ask whether the procedural due process owed a grand juror prior to the termination of a protected interest was clearly established at the time of dismissal, we recognized that Atherton's burden was great, but not insurmountable. "The question presented . . . boils down to this: Has [Atherton] proven that, under the three-part balancing analysis of *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] and the precedents that have applied it, he had a 'clearly established' right to process more comprehensive than that provided by the District?" *Atherton II*, 567 F.3d at 691 (quoting *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 984 (9th Cir. 1998)).

Foregoing a formal discussion of *Mathews*, the District Court on remand concluded:

Given (1) the absence of any legal precedent at the relevant time establishing the alleged due process right, (2) the absence in 2001 of any formal procedures for (and judicial involvement in) removing grand jurors in

Superior Court, (3) the apparent informal practice of delegating grand juror removal decisions to the Juror Officer, and (4) the Juror Officer's job description implicitly authorizing the practice, the Court finds that, even if a constitutional right exists in serving on a grand jury, defendants could not have reasonably known that their removal of plaintiff from the grand jury in April 2001 violated any clearly established statutory or constitutional rights of which a reasonable person would have known.

*Atherton v. District of Columbia Office of the Mayor*, 813 F. Supp. 2d 78, 84 (D.D.C. 2011) (*Atherton III*) (internal quotation marks omitted).

We agree with the District Court in substance. Assuming *arguendo* that *Mathews* requires a judicial determination and formal process prior to dismissal from a grand jury, no reasonable official in Appellees' position would have understood those requirements to be "clearly established" as a constitutional matter.

## II

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle*, 132 S. Ct. at 2093. "Clearly established" does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). To determine whether the state of the law was "beyond debate," we look to "cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view — if there is one." *Bame*

*v. Dillard,* 637 F.3d 380, 384 (D.C. Cir. 2011) (citation and internal quotation marks omitted). If the facts are truly novel and there are no relevant cases, "officials can still be on notice that their conduct violates established law" if their "conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002) (finding an obvious violation of Eighth Amendment where inmate was handcuffed to hitching post, once for seven hours without regular access to water or bathroom breaks).

Whether a government official is entitled to qualified immunity "generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (internal quotation marks omitted); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[A]n allegation of malice is not sufficient to defeat immunity if [official acted in] an objectively reasonable manner."). It is thus axiomatic that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Briggs*, 475 U.S. at 341.

Here, the procedural due process owed a grand juror seems as unclear today as it was over a decade ago when Atherton was dismissed from jury service on April 11, 2001. The parties have cited no cases directly on point and this Court has found just one of passing resemblance.[1] Atherton

---

[1] *United States v. Peters,* 791 F.2d 1270 (7th Cir. 1986), *superseded by statute on other grounds as stated in United States v. Guerrero*, 894 F.2d 261, 267 (7th Cir. 1990), implicated Rule 6 of the Federal Rules of Criminal Procedure, the Federal analogue to the Superior Court's Rule 6. The criminal defendant in *Peters* had argued "that an adversarial hearing was necessary to determine

instead argues by analogy, relying chiefly on *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987).

The trial judge in *Brown* had removed a juror who confessed an inability to honor or apply the R.I.C.O. conspiracy act as written. *See id.* at 594–95. Reversing the conviction, we held that a criminal defendant's Sixth Amendment right to a unanimous petit jury means "a court may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence." *Id.* at 596. Atherton contends that the holding in *Brown* is apposite to situations involving dismissal of grand jurors. He maintains that *Brown* makes clear that "grand jurors cannot be dismissed unless and until a judge makes a finding of good cause shown, and implicitly, only after notice and opportunity to be heard." Reply Br. at 15. This bold claim is simply

---

whether the grand juror's excusal had prior judicial approval or was simply an exercise of arbitrary prosecutorial discretion." *Id.* at 1283. The Seventh Circuit quickly dismissed the argument. Holding that no such hearing was required, the court stated:

> Rule 6(g) does not require an adversarial hearing before the court may dismiss a grand juror. Nor does Rule 6(g) require a court to notify the subject of the investigation that a grand juror has been dismissed or to explain the reason for the dismissal.
>
> An adversarial hearing would disrupt and delay grand jury proceedings, and therefore a petitioner requesting such a hearing bears a heavy burden.

*Id. Peters*, however, is distinguishable insofar as it involved a juror's request to be excused from the grand jury, a magistrate judge's approval of the excusal request, and, as might be expected given the facts of the case, an emphasis on the rights of the criminal defendant as opposed to those of the juror.

untenable.

As a threshold matter, *Brown* does not speak to process. In concluding that the Sixth Amendment categorically barred the removal of certain jurors, we never opined on what procedures are required in the "many circumstances" where courts may freely use Federal Rule of Criminal Procedure Rule 23(b) to discharge a juror. *Brown*, 823 F.3d at 597. Nor was it our intention to speak to process. To the contrary, we held "*only* that Rule 23(b) is not available when [] evidence discloses a possibility that the juror believes [] the government has failed to present sufficient evidence to support a conviction." *Id.* (emphasis added). The pointed reference to Rule 23 underscores *Brown*'s limited reach since Rule 23 implicates only trial juries, not grand juries. Simply put, nothing in *Brown* suggests grand jurors had a clearly established right to the "[j]udicial [h]earing [b]efore [d]ismissal" that Atherton believes *Mathews* requires. Reply Br. at 15.

But even if *Brown* spoke clearly to the question of process, it is simply inapposite. While both grand and petit juries "act[] as a vital check against the wrongful exercise of power by the State and its prosecutors," *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998) (internal quotation marks omitted), the District Court correctly noted that grand juries exist as "an institution separate from the courts" for which, "as a general matter at least," no " 'supervisory' judicial authority exists." *Atherton III*, 813 F. Supp. 2d at 82 (quoting *United States v. Williams*, 504 U.S. 36, 47 (1992)).

It may well be true that a decision in one context could prove persuasive or even controlling in the other, *see Batson v. Kentucky*, 476 U.S. 79, 84 n.3 (1986) ("The basic principles prohibiting exclusion of persons from participation in jury

service on account of their race are essentially the same for grand juries and for petit juries" (internal quotation marks omitted)), but for present purposes at least, a principle "clearly established" for a petit jury cannot be seamlessly applied to the grand jury — especially where the translation implicates a difference as significant as procedure and, concomitantly, the grand jury's relationship with the court.

For one thing, the function of a grand jury is "quite different from that of a petit jury." *In re Sealed Case*, 877 F.2d 976, 982 (D.C. Cir. 1989). With a greater number of jurors, no requirement of unanimity, and the safeguard of an eventual petit jury, *see United States v. Mechanik*, 475 U.S. 66, 73 (1986) ("[T]he petit jury's verdict rendered harmless any conceivable error in the [grand jury's] charging decision that might have flowed from the violation."), it is not clear whether the reasoning underlying our Sixth Amendment holding in *Brown* would apply with the same force here — if at all. At bottom, the suggestion that all these leaps in inferential logic — Sixth Amendment to Fifth Amendment, petit jury to grand jury, Rule 23 to Rule 6, criminal defendant to juror, etc. — constitute "clearly established" doctrine beggars belief.[2]

---

[2] Nor can we say appellees acted so brazenly as to violate Atherton's clearly established rights. *See Hope,* 536 U.S. at 741–42. To the contrary, the Superior Court's ad hoc administration of the juror removal process only reaffirms the "objective legal reasonableness" of Appellees' actions. *Messerschmidt*, 132 S. Ct. at 1245.

To be clear, we do not mean to suggest that informal policies and practices in government offices can defeat or otherwise undermine what is clearly established constitutional or statutory law. We mean only that informal practices of this sort are

## III

For the above reasons, the District Court's decision to find qualified immunity and grant Bailey-Jones's and Zachem's respective motions to dismiss is

*Affirmed.*

---

sometimes the symptoms of doctrinal confusion, not the cause. Such is plainly the case here.

ROGERS, *Circuit Judge*, concurring.  I join the court in holding that the federal prosecutor and the employee in the D.C. Superior Court Juror Office are entitled to qualified immunity because it was not "clearly established" at the time of Atherton's dismissal from the grand jury that either violated his constitutional rights.  I write separately because Atherton's challenge has uncovered the absence of a clear procedure for dismissing a grand juror.

The Supreme Court has emphasized that

> notwithstanding periodic criticism, much of which is superficial, overlooking relevant history, the grand jury continues to function as a barrier to reckless or unfounded charges . . . .  Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance.

*United States v. Mandujano*, 425 U.S. 564, 571 (1976).  So too this court has recognized the important role played by the grand jury in our constitutional framework, noting that despite criticism that it "is not independent at all," the grand jury remains "vital[] and importan[t]," and "[t]o disregard [its] role . . . would be to effectively emasculate the Grand Jury Clause of the Constitution."  *United States v. Coachman*, 752 F.2d 685, 690 n.29 (D.C. Cir. 1985).  More recently, the Supreme Court has reaffirmed that the grand jury acts as a shield, stating that there is "[n]o doubt" that "the Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power."  *United States v. Cotton*, 535 U.S. 625, 634 (2002).  Whether or not these characterizations of the grand jury always match reality, the idea of the independent grand jury as a "buffer or referee between the

Government and the people" is a well-established part of our jurisprudence. *United States v. Williams*, 504 U.S. 36, 47 (1992). Moreover, the Supreme Court has observed that, "with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process." *Powers v. Ohio*, 499 U.S. 400, 407 (1991).

Little appears to have been written on the subject of the dismissal of a grand juror, an action, which, depending on who takes it, implicates and could possibly threaten the heralded independence of the grand jury. The Grand jury operates "at arm's length" from the Judicial Branch, *Williams*, 504 U.S. at 47, and its proceedings are cloaked in secrecy for various reasons, notably in order to ensure the free deliberation and protection of the grand jurors themselves, *see Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10 (1979); *see also* D.C. SUPER. CT. CRIM. R. 6(e)(2); FED. R. CRIM. P. 6(e)(2). Given the insulation of grand jury procedures from outside scrutiny, it is unsurprising to discover that there is a dearth of judicial and academic commentary on the subject.

The absence of formal discussion, however, is not total. The United States District Court for the Eastern Division of the Northern District of Illinois has published a GRAND JURY FOREPERSON'S HANDBOOK, which addresses the issue of "problematic jury members." (1997), http://www.ilnd.uscourts.gov/JURY/Grndjury.htm; *see also* Susan W. Brenner, *Grand Jurors Speak*, *in* GRAND JURY 2.0: MODERN PERSPECTIVES ON THE GRAND JURY 42 (Roger Anthony Fairfax, Jr. ed., 2011) (discussing the HANDBOOK). This HANDBOOK makes clear that it is the "prerogative of the grand jury foreperson to recommend the dismissal of any grand jury member for due cause," but that it is the "Chief Judge" who will make the ultimate "decision." Similarly, the U.S. Department of

Justice's GRAND JURY PRACTICE MANUAL states that "the staff and/or the United States Attorney can *move* to excuse [a] grand juror for cause"; use of the verb "move" and the exclusion of "staff" as well as prosecutors from the final decision-making process implies requisite judicial involvement. MANUAL § I ( D ) ( 6 ) ( 1 9 9 1 ) ( e m p h a s i s  a d d e d ), http://www.justice.gov/atr/public/guidelines/206542.htm#ID6.

Atherton was sworn as a substitute grand juror and served on a grand jury for three days, when he was "summarily and permanently dismissed" for allegedly being "disruptive." *Atherton v. District of Columbia*, 567 F.3d 672, 676 (D.C. Cir. 2009) ("*Atherton II*"); *see also* Affidavit of Chief Judge Rufus G. King III, D.C. Superior Court, Nov. 14, 2006 ("King Aff."). He was dismissed by the Juror Office employee based on the Assistant United States Attorney's report that other grand jurors were complaining about him. *See Atherton II*, 567 F.3d at 676. So far as the record indicates, his dismissal was an *ad hoc* response. *See id.* at 676-77. Neither the employee's job description nor local rule nor court order explicitly authorized her to dismiss a sworn juror. Some time after Atherton's dismissal, the then-Chief Judge of the D.C. Superior Court changed the procedures to require that he be "consulted before any imposition of grand jury discipline." King Aff. During oral argument, however, counsel for the United States Attorney's Office and the District of Columbia could shed no light on what is intended by "consultation." Does the Chief Judge make the dismissal decision? If not, who does?

The rules of the D.C. Superior Court provide that a grand jury "shall serve until discharged by the Chief Judge or other judge designated by the Chief Judge." D.C. SUPER. CT. CRIM. R. 6(g) ("Rule 6(g)"). Nonetheless, the record in this case indicates that the procedure for dismissing a grand juror is unclear. Whatever clarity there may be in the statutes and rules, *see, e.g.*,

D.C. Code § 11-1908(b)(4); Rule 6(g), is, as a practical matter, undermined by the plausible but conflicting interpretations offered by the parties and the informal practice at the time of Atherton's dismissal, *see Atherton v. D.C. Office of the Mayor*, 813 F. Supp. 2d 78, 84 (D.D.C. 2011).[1]  Indeed, in "[a]ssuming *arguendo* that *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976),] requires a judicial determination and formal process prior to dismissal from a grand jury," Op. at 4, the court notes that "the procedural due process owed a grand juror seems as unclear today as it was over a decade ago when Atherton was dismissed from jury service on April 11, 2001," Op. at 5.

Although neither counsel could shed light on the content of the charge to the grand jurors, they clarified that "convening judges" charge grand juries in the D.C. Superior Court.  *See* Appellees' Joint Notice Re Grand Jury Instructions, Oct. 17, 2012, at 1.  It would seem to follow, given the involvement of a judge in the convening and charging of the grand jury, that the dismissal of a grand juror is also a decision for a judge.  In Atherton's case, the Chief Judge's understanding of the seriousness of dismissal of a grand juror might be inferred from his agreement to meet with Atherton and his later decision to change the informal procedures for grand jury discipline.  Further clarification of the procedures for dismissing a grand

---

[1]  The parties' divergent interpretations of the statutes and rules on juror dismissal reveal they are susceptible to misinterpretation – e.g., whether the Court's authority to exclude jurors under D.C. Code § 11-1908(b) is exclusively to be exercised by a judge, *see id.* § 11-1902(4) (defining "Court").  *Compare* Appellant's Br. at 27 *and* Reply Br. at 20 *with* Appellee Zachem's Br. at 45-46 *and* Appellee Bailey-Jones's Br. at 24-25.  Of course, neither informal policies nor practices can defeat constitutional or statutory requirements.  *Cf.* Op. at 8 n.2.

juror, however, would be in the interests of protecting the integrity and independence of the grand jury.