**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**David DRIVER, Defendant-Appellant.**

**No. 84–2924.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1985.

Decided Aug. 18, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 30, 1986.

---

Michael L. Pritzker, Chicago, Ill., for defendant-appellant.

Joel Merkel, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

After a jury trial, David Driver was convicted of one count of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, and was sentenced to eight years in prison. Driver advances three arguments on appeal: first, that the prosecution deprived him of due process by not disclosing material exculpatory evidence; second, that the admission of a highlighted summary of certain telephone records was erroneous; and third, that he was denied effective assistance of counsel. For the reasons stated below, we will affirm.

I

On July 18, 1984, a federal grand jury charged Driver in a one-count indictment with conspiring to distribute cocaine with Nicholas Smith, and with unindicted co-conspirators John Benton, John Shipley, Thomas Carpenter, and Steven Lear, between November 1982 and May 1983. Benton had entered into a plea agreement concerning another indictment based on the same transactions, but did not plead guilty until after the conclusion of Driver's trial. Smith, Shipley, Carpenter, and Lear also had pled guilty to crimes arising out of the same or similar transactions.

At trial on September 18, 19, and 20, 1984, Smith, Benton, Shipley, Carpenter, Lear (collectively the "co-conspirators"), and FBI agent Robert Dueker testified against Driver. Driver's only witness was Lear, who testified about Lear's addiction to cocaine. According to the trial testimony, which we must review in the light most favorable to the verdict, *see, e.g., United States v. Andrus*, 775 F.2d 825, 853 (7th Cir.1985), Benton obtained cocaine from Driver, and sold it to Smith, Shipley, Carpenter, and Lear, on a number of occasions between November 1982 and May 1983.

II

A. *Disclosure of Exculpatory Evidence*

Driver first argues that the government denied him discovery of four classes of information: (1) other offenses committed by the co-conspirators of which the government was aware; (2) telephone calls placed by the co-conspirators to other drug sources; (3) statements by the co-conspirators relating to other drug sources; and (4) Lear's psychological records.

As the Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and reaffirmed in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and *United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), due process requires that the prosecution disclose material evidence that is favorable to the accused. "To make out a successful claim under *Brady*, the defendant[ ] must establish (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." *United States v. Jackson*, 780 F.2d 1305, 1308 (7th Cir.1986). When the government fails to disclose favorable evidence, such "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, —— U.S. at ——, ——, 105 S.Ct. at 3384 (Blackmun, J.), 3385 (White, J., concurring); *see Jackson*, 780 F.2d at 1308–13. Justice Blackmun has suggested that "a reasonable probability" should have the same meaning in this context as it does with respect to establishing ineffective assistance of counsel under

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that is, "a probability sufficient to undermine confidence in the outcome." *Bagley,* — U.S. at ——, 105 S.Ct. at 3384.

### 1. *Other offenses*

With respect to other offenses allegedly committed by the co-conspirators, Driver did not call this court's attention to any offense committed by Benton, Smith, Shipley, Carpenter, or Lear, of which the government was aware and which it did not disclose to the defense. Driver's speculation that the government might not have disclosed all of the information in its possession about the co-conspirators falls far short of establishing that the prosecution suppressed exculpatory evidence.[1] *See Andrus,* 775 F.2d. at 843 ("A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden on the district court."). Indeed, in this case the government maintained an open file policy, under which it afforded Driver access to all of its files pertaining to his case.

██ Furthermore, the jury was aware that the government's witnesses had entered into plea bargains or had pled guilty to offenses arising out of the same or similar transactions. Benton, Shipley, and Carpenter testified that they had trafficked in cocaine, quaaludes, and marijuana. Benton and Shipley admitted that they had lied under oath with respect to their income tax returns. Smith testified that he had dealt in marijuana. Lear testified that he had trafficked in cocaine, marijuana, hashish, valiums, and quaaludes, had possessed stolen money orders or travelers's checks and

a stolen car, and had participated in counterfeiting. Given the amount of evidence as to the co-conspirators' characters that was before the jury, and given that the government maintained an open file policy of discovery, Driver's unsupported assertion that the government suppressed evidence of other offenses committed by the co-conspirators is insufficient to establish a *Brady* violation.

### 2. *Telephone calls to other drug sources*

In regard to calls to drug sources other than Driver, the government disclosed to Driver all of its records concerning telephone calls by Benton. Benton placed his calls from his two places of work. The telephone records which the government disclosed list all the long-distance calls placed from the two numbers, including business calls, Benton's calls to arrange drug deals, and other personal calls by other employees. Driver asserts that the government knew from its "debriefing" of the co-conspirators pursuant to their plea agreements which of the hundreds of calls were made by Benton to other drug sources.[2] He argues that, by not disclosing the caller's identity and the call's subject-matter for each call to another drug source, the government did not afford him meaningful discovery under *Brady.*

██ Driver, however, has failed to substantiate his speculation that the government knew of calls made by Benton to other drug sources. Although the government is under a duty to disclose material exculpatory evidence of which it is aware, it is not under a duty to investigate each of the hundreds of calls to determine whether a call was placed by Benton to another

---

**1.** In cases in which evidence is in the exclusive control of the government or has been destroyed by the government, a defendant might be able to establish that the government suppressed exculpatory evidence without specifically identifying the allegedly suppressed evidence. Driver, however, has made no showing at all by affidavits or otherwise that any evidence was suppressed by the government. *Cf. United States v. Balistrieri,* 779 F.2d 1191, 1218–21 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct.

1490, 89 L.Ed.2d 892, — U.S. ——, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986).

**2.** Driver's theory is that Benton, Smith, Shipley, Carpenter, and Lear identified Driver as their source of cocaine to protect their true supplier. If this is the case, however, it is doubtful that they would have disclosed to the government the name of their true source, nor would they have identified any telephone calls to him or her.

drug dealer. *See United States v. Beaver*, 524 F.2d 963, 966 (5th Cir.1975) ("*Brady* clearly does not impose an affirmative duty upon the government to discover information which it does not possess."), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756 (1976). By opening its files to Driver, the prosecution amply discharged its duty under *Brady*.

### 3. *Transactions with other drug sources*

■ Driver also has not shown by affidavit or otherwise that the government suppressed evidence within its possession of any transactions between the co-conspirators and other drug sources. In fact, the jury was aware that the co-conspirators obtained cocaine from other sources. For example, Shipley admitted that he also obtained cocaine from one Jeffrey Barnes. Carpenter testified that he purchased cocaine from Barnes and other persons. Smith conceded that he bought cocaine from someone else than Benton and Driver. Since the government opened its files to Driver and since a substantial amount of evidence that the co-conspirators purchased cocaine from other sources was introduced at trial, Driver's mere allegation that the government withheld evidence connecting the co-conspirators with other drug sources fails to make out a *Brady* violation.

### 4. *Psychological records*

■ With respect to Lear's psychological records, Driver argues that the prosecution suppressed a psychological report that was prepared for Lear's sentencing on counterfeiting charges. Lear pled guilty and the report was prepared in the Southern District of Indiana, while Driver was prosecuted in the Southern District of Illinois. Without deciding whether the United States Attorney for the Southern District

of Illinois possessed, for the purpose of *Brady* discovery, information included in a presentence report prepared for a United States District Court for another district, we do not believe the report is material. When he recalled Lear to the stand, Driver elicited the contents of the report, that is, that Lear was addicted to cocaine and marijuana. *See United States v. Sweeney*, 688 F.2d 1131, 1141–42 (7th Cir.1982) (nondisclosure of medical reports concerning witness's drug addiction was not prejudicial because contents of reports were elicited on cross-examination); *see also United States v. McMahon*, 715 F.2d 498, 501 (11th Cir.) (psychological report was not material because underlying facts were elicited on cross-examination), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983) & 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 739 (1984). Since the defense elicited the contents of the report, there is no reasonable likelihood that access to the document itself would have affected the outcome of the trial.

For the foregoing reasons, we conclude that the government did not violate its duty of disclosure under *Brady*. Driver simply has not shown that evidence was suppressed by the prosecution.

### B. *Admission of Highlighted Summary*

Over Driver's objection, the district court admitted into evidence a three-page typewritten summary of telephone calls by Benton to Driver, Shipley and Smith. Without objection,[3] Benton highlighted the dates, times, and duration of four telephone calls made on December 4, 1982, between Driver and Benton, and Shipley and Benton. Driver argues that the summary should not have been admitted because it contains calls that were wholly innocent.

■ The admission of a summary under Fed.R.Evid. 1006 requires "a proper foun-

---

**3.** Counsel stated that, "[d]espite the Government's contention, Counsel for Appellant did object to the highlighting of the document by the government witness, Robert Duecker, on the ground that said highlighting destroyed the integrity of the document." Reply Brief 7. Counsel cites as support page 315 of the record; however, counsel's citation to the record refers

to his objection to the highlighting of another document by another witness, which highlighting is not at issue on appeal, rather than to Benton's highlighting of the telephone records summary. Counsel did not object to Benton's highlighting of the summary of Benton's telephone calls. Tr. 111.

dation as to the admissibility of the material that is summarized and ... [a showing] that the summary is accurate;" however, the decision to admit or exclude the summary rests in the district court's sound discretion. *Needham v. White Laboratories, Inc.,* 639 F.2d 394, 403 (7th Cir.), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981). In this case, Benton testified that he made telephone calls to Driver, Shipley, and Smith to arrange cocaine deals, and that the summary accurately lists his calls to those individuals. The government introduced the summary so that the jury could examine Benton's calls to Driver, Shipley, and Smith without searching through the records of all the calls made from Benton's places of work. *Cf. United States v. Denton,* 556 F.2d 811, 816 (6th Cir.) (admission of composite recording of conversations to save time and inconvenience), *cert. denied,* 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178 (1977). The jury heard Benton testify that most of his calls to Driver did not concern drug transactions. Driver's objection that the calls were innocent goes to the exhibit's weight, but not its admissibility. *See United States v. Keplinger,* 776 F.2d 678, 694 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). We therefore conclude that the district court correctly admitted the exhibit.

 Driver also argues that the highlighting of the four telephone calls made on December 4, 1982, "presented to the jury an argumentative, prejudicial picture of the case," Reply Brief 6; however, he did not object to the highlighting of the summary of Benton's telephone calls to Driver, Shipley, and Smith. We, therefore, must inquire whether the highlighting, if it is error at all, is plain error, that is, whether it affects Driver's substantial rights. *See* Fed.R.Crim.P. 52(b). In doing so, we must be mindful that "the plain error exception to the contemporaneous objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). Given the amount of evidence of Driver's guilt, the highlighting of the four telephone calls—if it is error at all, which we strongly doubt—does not create a risk of a miscarriage of justice. Hence, the alleged error is not plain error. *See United States v. Howard,* 774 F.2d 838, 843–44 (7th Cir.1985) (admission without objection of color-coded chart is not reversible error).

### C. *Effective Assistance of Counsel*

Driver also argues that he did not receive effective assistance of counsel. At first glance, Driver's claim is quite unusual because it is advanced by the same attorney who represented him at trial. A claim that trial counsel rendered ineffective assistance might seem to be more commonly raised by another attorney. In this case, however, counsel states that he was under unusual personal strain, and argues that his personal concerns prevented him from providing effective assistance.[4]

 To demonstrate ineffective assistance of counsel, a defendant must establish that the trial counsel's performance fell below an objective standard of reasonableness, and that the deficient performance prejudiced him. *See Strickland v.*

---

4. Driver's trial began as scheduled on September 18, 1984. After voir dire, Driver's counsel requested in chambers a one-day continuance, which the district court granted. Counsel states that "the lives of counsel, his wife and children were in danger as a result of counsel's anticipated testimony as a government witness in a federal criminal investigation. Counsel had previously been shot and wounded by persons hired by the target of that investigation." Appellant's Brief 2. In exceptional cases, circumstances outside the courtroom might justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial. *See United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Goins v. Lane,* 787 F.2d 248, 252 n. 1 (7th Cir.1986). Defense counsel, however, has failed to support his assertions. He also has not demonstrated that the alleged events were so close in time to the trial as to justify such a presumption.

*Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Nutall v. Greer,* 764 F.2d 462, 466 (7th Cir.1985). In determining whether counsel's performance fell below an objective standard of reasonableness, courts presume that counsel's performance was within the " 'wide range of reasonable professional assistance.' " *Goins v. Lane,* 787 F.2d 248, 253 (7th Cir.1986) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). While the rule serves several purposes,[5] this rebuttable presumption of competence prevents counsel from deliberately making a tactical decision to forego a procedural opportunity— for example, to object to a question or to pursue a line of cross-examination—and then, after the tactic has proved unsuccessful, arguing on appeal that the tactical decision constituted ineffective assistance of counsel.[6] *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Thus, the defendant " 'must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " *Goins,* 787 F.2d at 253 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065).

In this case, the theory of the defense was that Driver was an innocent man who was framed by untrustworthy drug users and dealers in an attempt to reduce their sentences and to protect the identity of their true source of cocaine. Defense counsel thus actively cross-examined the government's witnesses to impeach their credibility, and challenged their veracity in the defense's closing argument. Driver does not complain about his counsel's conduct of these phases of the trial.

▮▮▮ Instead, Driver asserts that his counsel's failures to object to certain voir dire procedures, to tender instructions concerning multiple conspiracies, and to object to an allegedly improper comment in the prosecution's closing argument deprived him of effective assistance of counsel. We disagree.

Counsel's conduct of Driver's defense simply did not fall outside the wide range of reasonable professional assistance. Notwithstanding Driver's vague assertion that his counsel did not file "appropriate" voir dire questions, his defense attorney requested that the court question particular jurors further on certain subjects, but the district court declined to do so. Tr. 40–43. Driver also argues that counsel failed to object to venire members answering certain questions by raising their hands. However, the questions that were answered by the jurors raising their hands were merely preliminary questions dealing with whether any of the venire members had previously served on a jury. The district judge then personally questioned any juror who answered affirmatively. Counsel's decision not to object to this procedure, as well as his request for further voir dire questions, was well within the wide range of reasonable professional assistance.

Driver also argues that counsel failed to submit instructions concerning multiple

---

**5.** As the Supreme Court explained:

The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

*Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Thus, the presumption also prevents the proliferation of frivolous appeals, and assures defense counsel's independence from second-guessing by the courts.

**6.** Thus *Strickland's* standard for ineffective assistance of counsel resembles the cause and prejudice standard of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to the extent that a purpose of each is to prevent "sandbagging" by trial counsel. *See Reed v. Ross,* 468 U.S. 1, 13–14, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984) (a purpose of the *Wainwright* standard is to prevent sandbagging).

conspiracies. Counsel, however, could well have concluded that instructing the jury on multiple conspiracies would be inconsistent with the defense theory that Driver was an innocent man who was unfairly framed. "Trial counsel is not obligated to present every conceivable theory in support of the defense." *Goins*, 787 F.2d at 254. Defense counsel reasonably could have concluded that the strength of Driver's claim to innocence would have been dissipated by arguing to the jury that Driver was part of a conspiracy to distribute cocaine, but that he was not part of the conspiracy charged in the indictment. *Cf. id.* ("The strength of meritorious arguments is dissipated by the weakness of groundless ones."). After counsel's choice not to submit multiple conspiracy instructions has proved unsuccessful, we will not permit the defendant, by asserting a claim of ineffective assistance of counsel, to avoid the consequences of his counsel's decision, unless counsel's performance could not be considered sound trial strategy. We conclude that, because counsel's decision not to tender instructions on multiple conspiracies may be considered sound trial strategy, counsel's performance satisfied the objective standard of reasonableness required by the Sixth Amendment.

Finally, Driver argues that his counsel's failure to object to an allegedly improper statement in the government's closing argument denied him effective assistance of counsel. To place the statement in context, we should note that Lear testified that he and Benton obtained cocaine in November 1982 from a man whom he identified at trial as Driver. In his cross-examination and direct examination of Lear, Driver's counsel suggested that, due to Lear's addictions to various drugs, Lear could not recall several important details about the November 1982 transaction, including whether the supplier was in fact Driver. To rebut the suggestion that Lear forgot important details, the prosecutor argued that Lear recalled that the supplier had a beard. In closing argument, the prosecutor then stated:

> He [Lear] wanted to tell you that the individual [the supplier] had a beard. That is right, he had a beard, and ladies and gentlemen it's uncontradicted. His [Lear's] testimony is uncontradicted. He was called back this afternoon, by Mr. Pritzker [defense counsel], asked him again.[sic] I asked him again, does that affect your ability to identify? Did the man have a beard? Yes he did. Uncontradicted. Whose memory? It's not his. His [Lear's] memory is good.

Tr. 370.[7]

■ We conclude that the absence of an objection to the prosecutor's characterization of Lear's testimony as "uncontradicted" did not deprive Driver of effective assistance of counsel. Of course, defense counsel need not raise every possible objection. In proper cases, a decision not to object to clearly objectionable comments in the prosecution's closing argument is sound trial strategy. *Cf. Darden v. Wainwright,* —— U.S. ——, ——, 106 S.Ct. 2464, 2471–72, 91 L.Ed.2d 144 (1986) (defense counsel made the tactical decision not to object to improper comments by the prosecutor). In this case, defense counsel chose to respond to the prosecutor's comment in the defense's closing argument rather than objecting during the government's closing argument. Defense counsel observed in his closing argument that Benton, the third participant to the November 1982 transaction, did not testify that the supplier wore a beard. He then argued that Lear's testimony about the beard was not "uncontroverted," but was "uncorroborated." Tr. 379. By suggesting to the jury that Lear had made up the supplier's beard, just as he created his story that the supplier was Driver, defense counsel turned the prosecutor's statement against the government. Thus, we conclude that the defense counsel's conduct was within the wide range of reasonable professional assistance.

---

**7.** Although appellant's briefs refer only to the passage quoted above, the government stated again in its reply to the defense's closing argument that Lear's testimony that the supplier wore a beard was "uncontradicted." Tr. 384–85.

Moreover, there is no reasonable probability that an objection would have changed the trial's outcome. The testimony that was described as uncontradicted was not central to the case, but involved only a peripheral issue. The government did not describe as uncontradicted any other portion of Lear's testimony, or the testimony of any other witness. Given the strength of the evidence against Driver and the context in which the comments were made, we believe that the references to Lear's testimony that the supplier wore a beard did not affect the outcome of the case. Hence, we conclude that there is not a reasonable probability that, but for the absence of an objection, Driver would have been acquitted.

We therefore hold that Driver was not denied effective assistance of counsel.

### III

For the reasons stated above, Driver's conviction is

AFFIRMED.