**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Phillip L. NOLAN, Defendant–Appellant.**

No. 87–2685.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1990.

Decided Aug. 24, 1990.

Eric J. Klumb, Patricia J. Gorence, Francis D. Schmitz, Stephen J. Liccione, Ann M. Kisting, Asst. U.S. Attys., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Richard C. Moenning, Chicago, Ill., for defendant-appellant.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

MANION, Circuit Judge.

A jury convicted Phillip Nolan of entering a federally-insured savings and loan with the intent to commit larceny, in violation of 18 U.S.C. § 2113(a). Nolan appeals, and we affirm.

## I.

On the morning of October 6, 1986, Linda Carmody and Vicky Komans, tellers at the

Marquette Savings & Loan ("the bank" or "Marquette Savings") in Milwaukee noticed three young black men—whom they later identified in court as Nolan and co-defendants Archie Gill and Jeffrey Johnson—park their car in a lot behind the bank. This struck Komans as unusual because customers very rarely used this lot. Besides, the three men did not park between the parallel lines; instead, they parked in an unusual backward position with the car facing out of instead of into the lot. As a precautionary measure Komans copied the license number.

The men entered the bank, walked up to Carmody's teller station, and asked her whether "Ivory Daniels" worked there. He did not. The men then asked Carmody to make change for a $20 bill. She refused. The men approached Komans' teller station and asked her for change. Komans replied she could make change, and Gill placed a $20 bill on the counter. When Komans opened her cash drawer, Johnson reached around the teller station and grabbed approximately $360 from the drawer. The three men then quickly fled the bank and drove away.

Immediately after the robbery, Komans and Carmody described the robbers to the FBI. Carmody stated that one of the men wore a blue, satin-like jacket, bearing the logo "Dodgers" across the front. Carmody also stated that the man in the blue Dodgers jacket had a gap between his two front teeth. Komans had also noticed the Dodgers jacket; however, she did not tell the FBI that the man wearing that jacket had a gap between his teeth. Komans also viewed an array of seven photos immediately after the robbery. The array did not include photos of Nolan, Gill or Johnson, and Komans told the police that none of the men who robbed the bank were pictured in the array.

Komans, Carmody, and another witness did, however, identify Nolan (at least tentatively) before trial. On January 21, 1987, Komans and Carmody attended a lineup. Both tentatively identified Nolan, the only defendant present in the lineup. However, both requested the opportunity to see No-

lan's teeth, because they remembered that one of the robbers had a large gap between his teeth. Police conducted the lineup a second time. Both Komans and Carmody noted on the cards they were given to record their identifications that the suspect they each had identified appeared to have a foreign object in his mouth to disguise the gap in his teeth. They also noted on their cards that they could be positive in their identifications if they could see Nolan's teeth. Police attempted to conduct a third lineup but Nolan refused to cooperate.

In May, FBI agent Daniel Craft separately visited Komans and Carmody to show them photographic arrays. The first array consisted of seven photos of similar-looking young black men, and included photographs of Johnson and Gill. Komans selected Johnson's photograph. Komans then asked Craft about the person she had identified at the lineup. Craft responded that he was not aware she had identified anybody but Komans told Craft she was positive of her identification but did not want to make a selection on her identification card until she could see the suspect's teeth. When Komans indicated she could identify the suspect again, Craft showed her a second array. This array consisted of 26 similarly posed photographs of young black men, and contained pictures of all three defendants. Komans again selected Johnson's picture. She continued to review the photographs, and selected Nolan's picture also, identifying him as the man with the gap in his teeth.

Craft also showed Carmody both arrays. Carmody picked Johnson's picture from the first array. She again identified Johnson, and also identified Nolan, from the second array.

Another witness, a customer present at the bank during the robbery, was able to identify only Gill in court. However, when police had showed her a photographic array in January 1987, she indicated that the person depicted in Nolan's photograph bore a resemblance to one of the robbers.

Besides the testimony from the eyewitnesses, the government presented testimony from Gregory Hall, a fellow inmate

of Nolan's in the Milwaukee County Jail during late January 1987 (shortly after Komans and Carmody had viewed Nolan in the lineup). According to Hall, Nolan said that he had been in a lineup for a bank robbery but that he had disguised himself by putting some paper between his teeth. When asked whether Nolan had indicated whether he had committed the robbery for which he stood in the lineup, and which robbery that was, Hall responded that Nolan had "implicated" to him that he was responsible, and that Nolan mentioned the Marquette Savings and Loan. Hall also testified that Nolan talked about committing seventeen other robberies, each using a similar method: two or three people would enter a bank and ask a teller for change; while the teller was distracted, someone would leap over the counter and take money from the teller's drawer.

## II.

The principal issue at trial was the identity of the three men who robbed the bank. The government's theory (which the jury must have accepted, having found all three defendants guilty) was that Nolan was the man with the gap in his teeth; Gill was the man with the blue Dodgers jacket; and Johnson was the third man. That is how Komans identified the three defendants at trial, and the government presented other evidence to support this theory. Nolan, however, points to one bit of evidence that did not surface at trial as the basis for his first argument for reversal. An affidavit by Agent Craft (appended to a criminal complaint charging Gill with the robbery) states that Archie Gill's sister had told a Milwaukee police detective that Gill had "a gap between his front teeth, as described by Carmody" (apparently, in the description she gave immediately after the robbery). Nolan alleges that the government deliberately suppressed Craft's affidavit, thus violating his right to due process.

 The government's suppression of evidence favorable to an accused violates due process if that evidence is material. See *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963);

*United States v. Guerrero,* 894 F.2d 261, 268 (7th Cir.1990). Evidence is material (at least in a case such as this where the government has not knowingly used perjured testimony) when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Guerrero,* 894 F.2d at 268 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (plurality opinion)); see also *Bagley,* 473 U.S. at 685, 105 S.Ct. at 3385 (White, J., concurring); *United States v. Jackson,* 780 F.2d 1305, 1309–10 (7th Cir.1986).

 Nolan's argument falters at the start. Nolan (who is represented by a new attorney on appeal) did not present his suppression of evidence claim in the district court and has thus developed no factual record from which we could find that the government actually did suppress Craft's affidavit. There is no testimony from Nolan's trial counsel that the government did not make the affidavit available. There is no testimony from Craft or any other government agent that the FBI or U.S. Attorney refused (or even forgot) to turn over the affidavit. Nolan seems to argue (although his reasoning is difficult to follow) that if trial counsel had known about the affidavit he would have called Archie Gill's sister to testify because her testimony would have corroborated Carmody's initial description (that is, that the man who wore the Dodger jacket had a gap in his teeth) and would have tended to show that the man in the Dodger jacket and the man with the gapped teeth were really the same man—Gill. Therefore, it follows, the government must have suppressed Craft's affidavit.

This argument, however, is not sufficient to establish that the government suppressed Craft's affidavit. Nolan presents no evidence to dispute the government's assertion that it followed an "open file" policy in this case, making all law enforcement reports it possessed available to Nolan. Moreover, the fact that trial counsel

did not call Gill's sister does not establish, or even make it probable, that the government suppressed the affidavit. Counsel may very well have known about Gill's sister but could have decided not to call her for any number of reasons: failure to cooperate; a change in her statement; a tactical decision that her testimony would not be useful or would be harmful. These conclusions are all speculation, but no more so than the conclusion that the government suppressed Craft's affidavit. Speculation is not sufficient to establish that the government has suppressed evidence. Cf. *United States v. Driver*, 798 F.2d 248, 251 (7th Cir.1986).

██ In any event, even assuming the government suppressed Craft's affidavit, Nolan loses because the affidavit was not material. The case against Nolan was strong. Carmody and Komans both positively identified Nolan from photographic arrays. A third eyewitness tentatively identified Nolan's picture. Komans and Carmody also both tentatively identified Nolan at a lineup. More significantly, both noted during the lineup that Nolan appeared to have a foreign object in his mouth that prevented them from being more positive of their identifications. This was consistent with Hall's testimony that Nolan had disguised himself at the lineup by placing a piece of paper in his mouth.

It is true that there were weaknesses in Komans' and Carmody's identification testimony. It is also true that Hall, being a felon trying to cut a deal with the government, would not seem to be the most credible witness in the world. But Hall's testimony about Nolan's lineup disguise is self-corroborating: how else would he have known that information unless Nolan told him? And the consistency between Hall's testimony and Komans' and Carmody's observations of Nolan at the lineup buttresses Komans' and Carmody's identifications, and indicates that Hall testified truthfully about what Nolan told him.

Moreover, the only testimony Gill's sister could have given that would have been favorable to Nolan (as far as we can tell from Craft's affidavit) was that Gill had a

gap between his teeth. This would have been consistent with Carmody's initial description of the man in the Dodgers jacket (who the government maintained was Gill). But Nolan's counsel was able to elicit from Craft that Gill had a slight gap in his front teeth. Also, Carmody testified about her initial description. The information Nolan says should have been before the jury was in large part before it. In argument, Nolan's counsel emphasized Carmody's initial description and the weaknesses he saw in Carmody's and Komans' identifications. Despite this, the jury still found Nolan guilty. Given the strength of the government's case against Nolan, it is not reasonably probable that one more bit of evidence about Gill's teeth would have changed the outcome. Therefore, Craft's affidavit was not material and suppression of that affidavit (if it occurred) would not be grounds for a new trial.

### III.

██ Nolan also contends the district court erroneously admitted certain evidence against him. First, Nolan argues that the district court should not have allowed prisoner informant Hall's testimony about Nolan's disguising himself at the lineup and "implicating" himself in the bank robbery. Nolan cites no rule of evidence to support this argument; instead, he seems to argue (again, his argument is not entirely clear) that it was unfair to admit these statements because they exacerbated the effect of the government's alleged suppression of Craft's affidavit. This argument is nonsense. Hall's testimony about the line-up disguise and Nolan's "implicating" himself in the robbery were plainly admissible under Fed.R.Evid. 801(d)(2)(A) as admissions by Nolan. Even charitably construing Nolan's argument as one based on Fed.R.Evid. 403, which allows exclusion of evidence when that evidence's potential for unfair prejudice substantially outweighs its probative value, the argument is still meritless. Nolan's admissions were direct evidence of the crime he allegedly admitted, and any prejudice from this evidence resulted solely from its tendency

to connect Nolan to the robbery. Such "prejudice" is not unfair; connecting defendants to the crimes they allegedly committed is the reason for holding trials.

■ Nolan next contends that the district court should have excluded Hall's testimony of the seventeen other bank robberies that Nolan had admitted to committing and had explained in some detail. Nolan argues that the court should have excluded this testimony about the other robberies under Fed.R.Evid. 404(b). Rule 404(b) excludes evidence of other crimes "to prove the character of a person in order to show action in conformity therewith." Other crimes evidence is admissible, however, to prove such things as intent, plan, and identity. *Id.* But even if such evidence is relevant to an issue other than the defendant's character, the possibility exists that the evidence will blacken the defendant's character and possibly persuade the jury to convict the defendant because of his bad character. Because of this danger, before admitting evidence under Rule 404(b), the judge must evaluate whether the danger of unfair prejudice the evidence presents does not substantially outweigh the evidence's probative value. See *United States v. Beasley*, 809 F.2d 1273, 1278–79 (7th Cir. 1987).

■ Since the trial judge is in the best position to see the evidence as a whole and to analyze the various factors relevant in deciding whether to allow other crimes evidence (particularly the balance between unfair prejudice and probative value), the district judge has great discretion in deciding whether to admit such evidence. See *id.;* see also *United States v. Troop*, 890 F.2d 1393, 1401 (7th Cir.1989). But with this discretion comes the duty to exercise this discretion in a principled manner. See *Beasley*, 809 F.2d at 1279. Nolan argues that we must reverse because the record fails to reflect any "principled exercise of discretion," *id.,* by the district court in deciding to admit the testimony about the other robberies.

The government argues that Nolan has waived any Rule 404(b) objection because his objection in the district court did not specifically mention that rule. When the government began to ask Hall about the details of any other robberies Nolan may have mentioned, Nolan's attorney objected, stating that the evidence was "highly prejudicial" and "not relevant." The judge then said, "Let's have a side-bar" and asked the government whether it was contending the evidence was admissible under Rule 404(b). The prosecutor replied, "Yes." The judge then held a sidebar, which was not recorded. After the sidebar, the government overruled Nolan's objection, based on Rule 404(b).

■ The biggest problem here is not Nolan's attorney's failure to mention Rule 404(b) in his initial objection. After all, the trial judge knew that Rule 404(b) was the relevant rule to consider, and waiver is a doctrine designed to protect the district court from being reversed on grounds it did not have a chance to consider. The real problem is that the sidebar discussion was not recorded and transcribed. It should have been. The Court Reporter's Act, 28 U.S.C. § 753(b), requires court reporters to record verbatim "all proceedings in criminal cases had in open court." Although the Ninth Circuit has suggested that § 753(b) does not require court reporters to record sidebar conferences, see *United States v. Piascik*, 559 F.2d 545, 548 (9th Cir.1977), we agree with those courts that have applied § 753(b)'s recording requirement to sidebar discussions. See *United States v. Smith*, 787 F.2d 111, 114 (3d Cir.1986); *United States v. Gallo*, 763 F.2d 1504, 1529–32 (6th Cir.1985); *United States v. Snead*, 527 F.2d 590, 591 (4th Cir.1975); *Edwards v. United States*, 374 F.2d 24, 26 (10th Cir.1966). Reasonable minds may differ over whether a sidebar conference is a proceeding in open court. But the reason for requiring courts to record trial proceedings—to preserve a record for appellate review—supports applying § 753(b) to sidebars. See *Smith*, 787 F.2d at 114; *Edwards*, 374 F.2d at 26 n. 2. It is common for trial judges to hold discussions about evidentiary objections (and other matters) at sidebar. It is often necessary (and always useful) to know what was said in

those discussions to properly decide on appeal. This case is a perfect example. Without knowing what was said at the sidebar, we do not know what arguments Nolan's attorney has preserved for appeal because we do not know what arguments he made to the judge. Nor can we readily determine whether the judge properly exercised his discretion because we do not know the judge's reasons for admitting Hall's testimony about the robberies.

The duty to comply with § 753(b) lies with the court, not the parties. *Gallo*, 763 F.2d at 1530; *Edwards*, 374 F.2d at 26 n. 2. Even so, the district court's failure to comply with § 753(b) does not require us automatically to reverse the court's judgment. A defendant may waive an objection to the court's failure to comply with § 753(b), either expressly or by acquiescing in the court's procedure. See *United States v. Ellzey*, 874 F.2d 324, 330 (6th Cir.1989); *Gallo*, 763 F.2d at 1531; *Piascik*, 559 F.2d at 549; see also *Houston v. United States*, 419 F.2d 30, 34 (5th Cir. 1969). Even if the issue is not waived, a failure to comply with § 753(b) is reversible only if the defendant can demonstrate prejudice. See *Gallo*, 763 F.2d at 1530; *Snead*, 527 F.2d at 591. Prejudice is present when the district court's failure to comply with § 753(b) makes it impossible for the appellate court to determine if the district court has committed reversible error. But lack of a transcript does not necessarily mean that review is impossible. Federal Rule of Appellate Procedure 10(c) provides that when a transcript of a proceeding is unavailable, "the appellant may prepare a statement ... of the proceedings from the best available means...." The appellant must then submit that statement to the appellee. If the appellee objects to any portion of the statement, the district court decides on the objections, and the statement then becomes part of the appellate record. Fed.R.App.P. 10(c); see *United States v. Keskey*, 863 F.2d 474, 476–78 (7th Cir.1988).

We recognize that sometimes trial participants' recollections may be too vague, and notes and other trial materials too sketchy, to make Rule 10(c) an adequate device for reconstructing a record. (That is an important reason why district courts must comply with § 753(b)). Still, given Rule 10(c), we agree with the Sixth Circuit that it is not appropriate to reverse a district court for failing to comply with § 753(b) "[a]bsent a showing by counsel on appeal of a reasonable but unsuccessful effort to determine the substance of the off-the-record remarks...." *Gallo*, 763 F.2d at 1530; see also *Ellzey*, 874 F.2d at 330.

Even if counsel has tried unsuccessfully to determine what was said at an unrecorded sidebar, failure to comply with § 753(b) still might not cause the prejudice necessary for reversal. For example, it may be possible to accept the appellant's contentions as true, or "indulg[e] all reasonable inferences favorable" to the appellant, and still conclude that the district court did not err. Cf. *United States v. Murphy*, 768 F.2d 1518, 1536 (7th Cir.1985). It might also be possible to assume an error occurred but determine the error was harmless.

Judged by those principles, the district court's failure to record the sidebar conference concerning Hall's testimony was not reversible error. First, Nolan does not contend that his attorney ever requested that the sidebar be on the record, or ever objected to the district court's consistent procedure throughout the trial of not recording sidebar discussions. Thus, Nolan has waived objection to the court's failure to record the sidebar, and has consequently waived his right to complain that the judge's reasons for admitting Hall's testimony do not appear in the record. Second, Nolan has made no attempt on appeal to reconstruct the sidebar discussion through the procedure provided by Fed.R. App.P. 10(c), or any other method. He has thus failed to show the "reasonable but unsuccessful effort to determine the substance of the off-the-record remarks" necessary to have this court reverse the court's judgment.

Even if Nolan had properly preserved and presented his claim about the district court's failure to record the sidebar

discussion, that failure would not be reversible. Although a judge should state his reasons for admitting 404(b) evidence, "judges need not explain the obvious." *Beasley*, 809 F.2d at 1280. Hall's testimony about the other robberies was plainly relevant, and the danger of the jury convicting Nolan for an improper reason because of this testimony was slight.

First, Hall's testimony was relevant to show Nolan's method of operating, which in turn was relevant to identify him as one of the robbers. See *United States v. Hudson*, 884 F.2d 1016, 1021–22 (7th Cir.1989). According to Hall, the other robberies all involved two or three men who entered a bank. The men would ask for change for a twenty or fifty dollar bill. When the teller opened her drawer, and while she was distracted, one person would jump the counter and take money from the drawers. These robberies bore a striking similarity to the Marquette Savings robbery. Nolan quibbles that Johnson did not jump the counter but simply reached around, and that Hall testified that in the other robberies, the robbers employed a single lookout, something that did not happen during the Marquette Savings robbery. Despite these minor differences, the other robberies shared sufficiently distinctive features with the Marquette Savings robbery so that those similar features served as a kind of "signature" and could raise an inference that if Nolan participated in the other similar robberies, he also participated in the Marquette Savings robbery. See *United States v. Connelly*, 874 F.2d 412, 416–17 (7th Cir.1989).

The testimony about the other robberies was also relevant to show Nolan's intent. The government charged, and had to prove, that Nolan entered the bank with the intent to commit a larceny; if he entered the bank, and then decided that since he was there he might as well rob it, he would not have committed the crime charged against him. See 18 U.S.C. § 2113(a). The fact that Nolan committed several other very similar robberies tends to show Nolan entered the bank intending to rob it (as he had done at other banks) rather than entering the bank and then robbing it on a spur-of-the-moment impulse.

Against these purposes for admitting Hall's testimony about the robberies must be balanced the danger of unfair prejudice—that is, the danger that the jury would convict Nolan on an improper basis, such as a belief that he was a bad man. However, the chance that Hall's testimony might sway the jury to decide this case on an improper basis was practically nil. To convict Nolan simply because he had committed the other robberies, the jury would have had to believe Hall's testimony about those robberies. But it is inconceivable the jury would have believed Hall's testimony about the other robberies, but not believed the rest of Hall's testimony—including Hall's statement that Nolan "implicated" himself in the Marquette Savings robbery and Hall's testimony about Nolan's lineup disguise. This is especially so given that Carmody's and Komans' testimony corroborated Hall's testimony about the lineup disguise. If the jury believed Nolan actually robbed the Marquette Savings and Loan, it makes little sense to suggest the jury convicted Nolan for that robbery because he had committed other robberies. Because Hall's testimony about the other robberies was plainly relevant to determine Nolan's identity and intent, and the danger of that testimony unfairly prejudicing Nolan was slight (at best), the district judge did not abuse his discretion in admitting that testimony under Rule 404(b), even though he failed to assure the record showed his reasons for admitting the testimony.

Nolan raises one other evidentiary error. The district court admitted testimony from several witnesses that showed the car Nolan and his compatriots used as their getaway car was stolen. According to Nolan, the evidence also tended to show that he and his compatriots actually stole the car themselves. The government did not introduce the evidence to show Nolan actually stole the car, and never argued that he did. We will, however, assume that the jury reasonably could have believed that Nolan did steal the car.

Nolan contends the stolen car evidence was inadmissible under Rule 404(b). But Nolan did not raise this objection in the district court. Therefore, we will examine the district court's decision to admit this evidence under the plain error standard. Fed.R.Evid. 103(d); Fed.R.Crim.P. 52(b). "A 'plain error' is one that results in 'an actual miscarriage of justice,' which implies that the defendant 'probably would not have been convicted but for the erroneously admitted evidence.'" *United States v. Mejia*, 909 F.2d 242, 247 (7th Cir.1990) (citations omitted).

It was not plain error to admit evidence that Nolan's getaway car was stolen. The evidence was relevant to show the robbers' preparation for the crime and their intent to rob the bank when they arrived there; the jury could reasonably infer that Nolan, Gill, and Johnson used a stolen car to avoid being identified. More importantly, the danger that the jury would convict Nolan for the Marquette Savings robbery because he stole the car was slight at best, for much the same reason that Hall's testimony about the other robberies presented little danger of unfair prejudice. There was no direct evidence about who actually stole the car. Any inference that Nolan was knowingly using a stolen car, or actually stole it, depends on identifying Nolan as one of the men who was actually using the car the day of the robbery. But if the jury believed the identification evidence that placed Nolan in the car, it would necessarily have believed that Nolan was present at and robbed the bank. If the jury believed Nolan robbed the bank, it makes little sense to argue the jury convicted him for the bank robbery because he had stolen a car. It almost goes without saying then that admitting the car theft evidence was not the determining factor in the jury's decision to convict.

Somewhat more troubling than the evidentiary issues Nolan raises is the court's instruction to the jury that it could consider other acts evidence "only on the question of *predisposition*, intent, identity, or plan." Nolan correctly points out that the reference to "predisposition" is error.

See *United States v. Zapata*, 871 F.2d 616, 621 (7th Cir.1989). The district judge used the Seventh Circuit's pattern instruction on other acts evidence, pattern instruction 3.08. The note following that instruction states that other acts evidence may be admissible to prove "predisposition." That is correct where a defendant raises an entrapment defense because in such a case the defendant places his predisposition to commit a crime directly at issue. See *United States v. Swiatek*, 819 F.2d 721, 728 (7th Cir.1987); *United States v. Simtob*, 901 F.2d 799, 807–08 (9th Cir.1990). But with the exception of entrapment cases, Rule 404(b) is meant to prevent using other acts to prove a person's propensity, or predisposition, to commit a similar act. See *Beasley*, 809 F.2d at 1277–78. Apparently, the district court simply made a mistake by including "predisposition" in the instruction, but this mistake resulted in telling the jury it could draw the very inference that Rule 404(b) forbids.

But although the court's instruction was erroneous, the error was harmless. The instruction was the only mention of predisposition during the four-day trial. The government did not argue to the jury to use other acts evidence as proof that Nolan was predisposed to commit bank robberies. Most importantly, as we have seen, the other acts evidence in this case (Hall's testimony about the other robberies and the stolen car evidence) presented practically no danger that the jury would decide the case based on the forbidden inference because to tie Nolan to these other acts the jury would have had to believe witnesses whose testimony tied Nolan directly to the Marquette Savings robbery. We are confident that the erroneous instruction had no effect on the jury's verdict.

## IV.

Nolan finally argues that his trial counsel provided constitutionally ineffective assistance. The record shows that Nolan's trial counsel cross-examined witnesses to highlight perceived weaknesses in their testimony, and made a closing argument that emphasized what he considered the weak-

nesses in the government's case. Trial counsel obtained discovery materials, reviewed them, and sought more information from the government. He also filed jury instructions and voir dire questions, and polled the jurors after they announced their verdict. Still, according to Nolan, his attorney's performance was deficient because: he failed to adequately investigate the case before trial and find out about Gill's sister's statement that Gill had a gap in his teeth; he failed to file motions to suppress Hall's testimony, and to suppress the car theft evidence; he failed to object properly at trial to the other acts evidence; he failed to request that the court record the sidebar discussion concerning the testimony about other robberies; he failed to object to the other acts instruction; and he failed to emphasize adequately Hall's credibility during closing argument.

To establish ineffective assistance of counsel, Nolan must show that his trial counsel's performance was deficient. To determine whether counsel's performance was deficient, we must measure his performance against "an objective standard of reasonableness" based on "prevailing professional norms," while "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984). Nolan must also show that any deficiencies in counsel's performance prejudiced his defense. *Id.* at 682, 104 S.Ct. at 2061. To show prejudice, Nolan "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. This standard for prejudice is the same as the standard for deciding whether exculpatory evidence the government has suppressed is material. See *id.; United States v. Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383; *United States v. Driver*, 798 F.2d 248, 250–51 (7th Cir.1986).

Except for counsel's failure to object to the clearly wrong other acts instruction, and perhaps counsel's failure to request that the court record the sidebar discussion concerning the evidence of other robberies, Nolan's claims of deficient performance are weak. We have reviewed Nolan's counsel's final argument, and find that Nolan's complaints about it are nothing but hindsight nit-picking; counsel adequately probed the perceived weaknesses in the government's case, and the jury was already well aware that Hall was an ex-felon trying to cut a deal. Nolan offers little more than speculation about his trial counsel's failure to investigate, and presents no evidence that his failure to make certain objections or file certain pretrial motions were not the result of reasonable strategic decisions. These weaknesses in Nolan's argument are hardly surprising, since Nolan did not present his ineffective assistance claim in the district court (just as he did not present his suppression of evidence claim in the district court), and has thus developed no factual record concerning his claims.

However, even assuming (without deciding) that the alleged errors Nolan's counsel made were objectively unreasonable, and that counsel's performance was deficient, Nolan's ineffective assistance claim fails because he has not established prejudice. We have already decided in analyzing Nolan's suppression of evidence claim that counsel's failure to discover and call Gill's sister would not, in all reasonable probability, have changed the jury's verdict. Nor is it reasonably probable that counsel's failure to object to the car theft evidence, to Hall's testimony about the other robberies, and to the other acts instruction affected the jury's verdict. As we have noted, the other acts instruction, though erroneous, was harmless error. The other acts evidence itself would have been admissible even over proper objection. More importantly, it presented practically no danger that the jury would convict Nolan for something other than the crime being tried.

Nolan raises one alleged error by counsel that we have not previously dis-

cussed. Nolan contends that trial counsel should have filed a motion to suppress Hall's testimony, on the grounds that Hall may have been a law enforcement agent and that Nolan may not have been advised of his *Miranda* rights before speaking to Hall. Nolan offers nothing but his speculation to show that Hall was a government agent. In any event, even if Hall was a government agent posing as an inmate, he would not have violated the Fifth Amendment's self-incrimination clause by gathering information from a suspect who has not been given *Miranda* warnings. *Illinois v. Perkins,* — U.S. —, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). It is not ineffective assistance for counsel to not file a meritless motion.

For the reasons stated above, Nolan's conviction is

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

I generally agree with the majority's analysis, but I think Part III might benefit from additional scrutiny. The majority says that the admission by Nolan himself concerning the other 17 bank robberies, as part of a sort of "general confession," qualifies as "bad acts" testimony going to Nolan's identity. This testimony is unusual evidence of Nolan's *modus operandi* since it has no independent evidentiary basis beyond Nolan's own hearsay statement. Ordinarily, proof of bad acts comes from a source other than the defendant's own admission or confession. For example, there may be past criminal convictions or the testimony of other witnesses that the defendant has committed similar crimes, employing the same (somewhat unusual) technique. *Cf. United States v. Hudson,* 884 F.2d 1016 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). The technique or method is the "signature" of the perpetrator and tends to show that the perpetrator is the defendant.

Here the defendant himself in a statement to a fellow prisoner implicated himself in the current crime and proceeded to embroider his criminal history by telling of the 17 like crimes he had committed. It is difficult to see how this tends to "identify" him much more than his "implication" in the crime in question has already done. Of course, if the police have records of the other 17 crimes and can match them up with the defendant's account, that would be probative of the credibility of witness Hall. Also, if Nolan does not describe the method used in the crime for which he is being prosecuted but does describe a like method he says he has used in 17 other crimes, those circumstances would help establish identity. In the present case, it seems to me that the evidence of the 17 other crimes may show principally that Nolan is a serial bank robber and has a propensity to rob banks employing a consistent methodology.

Ordinarily, a district court is required to determine whether character evidence is relevant towards establishing identity, intent or some other permissible matter besides propensity. In *Hudson,* this court observed that character evidence may be admitted under Federal Rule of Evidence 404(b) if (1) the evidence sought to be admitted goes to a matter other than the defendant's propensity to commit the crime charged; (2) the other act is sufficiently close in similarity and time to be relevant; (3) there is evidence sufficient to support a finding by the jury that the defendant committed the similar act; and (4) the probative value of the evidence outweighs its prejudicial effect. *Hudson,* 884 F.2d at 1018–19 (citing *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984)). Because the sidebar conference was not transcribed, there is some question whether the district court applied the *Hudson* test (particularly parts 2 and 3 of the test) to Hall's testimony about Nolan's admission. In any event, I am persuaded that any error the district court may have committed in admitting the evidence regarding the 17 other bank robberies was harmless in light of the substantial evidence of Nolan's involvement in the present crime.